## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER L. STEVENS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:21-00187-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| ***Commissioner of Social Security***, | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Christopher L. Stevens brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 14, 15) and those portions of the transcript of the administrative record (Doc. 13) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 18).

## I. *Procedural Background*

Stevens protectively filed the subject DIB application with the Social Security Administration ("SSA") on July 22, 2019. After the application was denied initially, and again on reconsideration, Stevens requested, and on September 17, 2020, received, a hearing on his application with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. On October 7, 2020, the ALJ issued an unfavorable decision on Stevens's application, finding him not entitled to benefits. (*See* Doc. 13, PageID.64-83).

The Commissioner's decision on Stevens's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied his request for review of the ALJ's unfavorable decision on February 22, 2021. (*See id.*, PageID.56-60). Stevens subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the

Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district

court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

---

where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

Eligibility for DIB requires, among other things that a claimant be "under a disability[,]" 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and

quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ found that Stevens met the applicable insured status requirements through June 30, 2024, and that he had not engaged in substantial gainful activity since the amended alleged disability onset date of January 1, 2018.[7] (Doc. 13, PageID.70). At Step Two, the ALJ found that Stevens had the following severe impairments: hypertension; degenerative joint disease of the knees, back, and feet; obstructive sleep apnea (OSA); post-traumatic stress disorder (PTSD); major depressive disorder; and opioid dependency.[8] (Doc. 13, PageID.70). At Step Three,[9] the ALJ found that Stevens did not have an impairment or combination of

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)). Stevens initially alleged disability beginning March 27, 2019, but later amended it to January 1, 2018. (*See* Doc. 13, PageID.67).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed

impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.70-72).

At Step Four,[10] the ALJ determined that Stevens had the residual functional capacity (RFC) "to perform medium work as defined in 20 CFR 404.1567(c),[11] that

---

to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11] "To determine the physical exertion requirements of different types of

is limited to: lifting and/or carrying up to 50 pounds occasionally, and up to 25 pounds frequently; standing and/or walking up to or about 6 hours, and sitting up to or about 6 hours in 8-hour workdays with normal breaks; and occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Mentally, he can understand, remember, or apply short, simple, 2-step directions; he can maintain concentration, persistence, or pace for short, simple, 2-step tasks for 2-hour periods during 8-hour workdays with customary breaks; he can have no contact with the general public; he may require direct, supportive supervision; and he can adapt to gradual, well-explained changes in routines and work procedures." (Doc. 13, PageID.72-77).

Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Stevens was unable to perform any past relevant work. (Doc. 13, PageID.77). However, at Step Five, after considering additional testimony from the vocational

---

employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

expert, the ALJ found that there exist a significant number of jobs in the national economy as a washer (approximately 300,000 jobs nationally) and hand packager (approximately 600,000 jobs nationally) that Stevens could perform given his RFC, age, education, and work experience. (*Id.*, PageID.77-78). Thus, the ALJ found that Stevens was not "disabled" under the Social Security Act. (*Id.*, PageID.78-79)

### IV.   *Analysis*

### a.   VA Ratings

The ALJ noted that medical records from the Department of Veterans Affairs "from June 2019 show that [Stevens] has VA disability benefits based on a service connected disability rating of 90% for various conditions…" (Doc. 13, PageID.75). The ALJ, however, found those VA ratings were "not persuasive in determining [Stevens's] residual functional capacity for the relevant period[,]" explaining: "[T]he Social Security Administration is not bound by VA disability determinations. VA disability ratings determinations use different criteria that do not align with the Social Security regulations and the sequential evaluation process used to determine whether claimants are disabled under those regulations." (*Id.*). Stevens argues the ALJ reversibly erred by "rejected the VA rating decision because it was from another governmental agency without properly evaluating the evidence the VA used to make their decision." (Doc. 14, PageID.1626). The undersigned disagrees.

For claims filed on or after March 27, 2017, such as the subject application, the Social Security regulations recognize that "[o]ther governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the

Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the Commissioner] and is not [the Commissioner's] decision about whether [the claimant is] disabled or blind under [the SSA's] rules." 20 C.F.R. § 404.1504. Therefore, the Commissioner "will not provide any analysis in [her] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits[,]" but "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [is] receive[d] as evidence in [the] claim…" *Id.*[13]

---

[13]    For claims filed before March 27, 2017, under this circuit's precedent, when an ALJ declined to follow another agency's disability determination, a reviewing court was required to first "ask whether the ALJ's decision shows that she considered the other agency's decision[,]" with remand for further consideration required "[i]f the ALJ's decision d[id] not discuss the other agency's decision…" *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020) (resolving tension in Eleventh Circuit precent on the issue). "[I]f the ALJ discussed the other agency's decision," the reviewing court would then determine "whether substantial evidence in the record support[ed] the ALJ's decision to depart from the other agency's decision." *Id.*

   Noting that the current version of § 404.1504 did not apply to the claim in *Noble*, the panel therefore did not "take it into account or address it further." *Id.* at 1324. However, the Social Security regulations expressly delegate to the Commissioner the power "to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the

Accordingly, the ALJ properly declined to rely on the VA's disability determinations because they were issued under that agency's own rules and regulations. Moreover, contrary to Stevens's conclusory suggestions otherwise, the ALJ's decision extensively discussed the medical records underlying the VA's disability determination, and Stevens has failed to show that the ALJ erred in considering them.[14]

### b.   Medical Opinions

Stevens also argues the ALJ erred in considering various medical opinions in the record. No reversible error has been shown.

Medical opinions and prior administrative findings are two categories of evidence the Commissioner considers in making disability determinations. *See* 20

---

method of taking and furnishing the same' for adjudicating disability claims." *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (quoting 42 U.S.C. § 405(a)). Stevens does not argue that the change to § 404.1504 exceeded the Commissioner's statutory authority or was arbitrary and capricious—indeed, his brief does not mention § 404.1504 at all. Accordingly, the Court will apply the rule for other agency's disability determinations found in the current version of § 404.1504 to Stevens's claim.

[14] At oral argument, Stevens for the first time expressly acknowledged the current version of § 404.1504, but refined his argument as claiming the ALJ failed to delve into the "symptomology" underlying certain aspects of the VA's disability determination. As the Court sees it, Stevens's refined argument essentially claims the ALJ was required to reverse-engineer the VA's disability decision in order to determine why it reached the conclusions it did. The undersigned rejects this argument as simply an attempt to apply the old rules for VA disability determinations that § 404.1504 has supplanted, *see* n.13, *supra*. Under current § 404.1504, because other agencies' disability determinations are made under different rules than those used by the SSA, an ALJ is not required to address another agency's disability determinations at all. Therefore, it is irrelevant why the other agency reached the disability determinations it did under its own rules. While the ALJ must evaluate any submitted evidence underlying the other agency's decision, that evidence is evaluated under SSA's rules for disability determination.

C.F.R. § 404.1513(a). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).[15] "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review … in [the

---

[15] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Stevens's. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017). These revisions have been upheld as a valid exercise of the Commissioner's regulation-promulgating authority. *See Harner*, 38 F.4th at 896-98.

claimant's] current claim based on their review of the evidence in [the] case record…" 20 C.F.R. § 404.1513(a)(5).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or

prior administrative medical findings in [the] determination or decision." 20 C.F.R.

§ 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required

to, explain how [the Commissioner] considered the [other] factors … when …

articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior

administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner

"find[s] that two or more medical opinions or prior administrative medical findings

about the same issue are both equally well-supported … and consistent with the

record … but are not exactly the same…" *Id.* § 404.1520c(b)(3).

One of the medical opinions the ALJ considered was a VA Disability Benefits

Questionnaire completed by Brenda Clausell-Rigsby, NP, on May 7, 2018 (Doc. 13,

PageID.602-618). Stevens argues that the ALJ "did not fully discuss the Disability

Benefit Questionnaires that addressed the severity of [Stevens]'s knee pain[,]" and

"failed to address the portion of Ms. Clausell-Rigsby's opinion that discussed

functional limitations secondary to pain and flares." (Doc. 14, PageID.1626). Even a

cursory review of the ALJ's decision, however, belies this assertion. The ALJ

addressed Nurse Clausell-Rigsby's opinion as follows:

> In a VA Disability Benefits Questionnaire dated May 7, 2018, Brenda
> Clausell-Rigsby, NP, reported that the claimant has decreased ability
> to tolerate prolonged standing and walking as a result of increased
> pain (Ex. 2F, pg. 17). The undersigned finds Ms. Clausell-Rigsby's
> opinion is not fully persuasive because she did not provide an
> assessment of the claimant's specific physical limitations. Additionally,
> Ms. Clausell-Rigsby's suggestion regarding prolonged
> standing/walking is not entirely consistent with her report that the
> claimant had 5/5 strength and essentially normal ranges of motion in
> both knees (Ex. 2F). Moreover, her opinion is not supported by the
> entirety of the claimant's treatment history.

(Doc. 13, PageID.76).

As the ALJ correctly noted, Nurse Clausell-Rigsby's opinions regarding the effects of Stevens's knee pain—that "functional loss is expected due to pain," and that Stevens had "decreased ability to tolerate prolonged standing and walking as a result of increased pain" (*see id.*, PageID.608-609, 617)—were generalized observations devoid of any "specific physical limitations," and were not indisputably indicative of disabling pain and impairment. Moreover, the ALJ expressly found that, to the extent Nurse Clausell-Rigsby was suggesting impairment greater than what the ALJ found, her opinion was not supported by her objective observations— Stevens having "5 strength and essentially normal ranges of motion in both knees." And contrary to Stevens's bald assertion that the ALJ failed to evaluate Nurse Clausell-Rigsby's opinion "for its consistency with the medical evidence of record" (Doc. 14, PageID.1626-1627), the ALJ expressly stated that Nurse Clausell-Rigsby's opinion was also "not supported by the entirety of the claimant's treatment history." The ALJ's decision preceding discussion of Nurse Clausell-Rigsby's opinion reflects a thorough consideration of the record evidence, and Stevens has pointed to nothing suggesting the ALJ erred in considering the record as a whole.

The ALJ also considered the prior administrative findings of two state agency reviewers as follows:

> In regard to the claimant's mental functioning, on October 29, 2019, Joanna Koulianos, Ph.D., viewed the evidence and found the claimant has moderate mental limitations. Dr. Koulianos opined the claimant can understand, remember, and carry out short and simple instructions; he can concentrate and attend for reasonable periods of time of up to 2 hours; his contact with the general public should not be

a usual job duty; and his supervision should be tactful and supportive (Ex. 3A). On February 12, 2020, Linda Duke, Ph.D., also found the claimant has moderate mental limitations. Dr. Duke opined the claimant can understand, remember, and carry out short and simple instructions; he can concentrate and attend for reasonable periods of time of up to 2 hours; his contact with co-workers and the general public should not be a usual job duty; his supervision should be provided in a supportive manner; and changes in his work routines should be fully explained and gradually introduced (Ex. 4A). The undersigned finds the opinions of Dr. Koulianos and Dr. Duke are largely persuasive because they are consistent with the claimant's mental health treatment history at the time of their evaluations and portions of the claimant's September 2019 report of his activities of daily living. Furthermore, the subsequent evidence does not suggest significant worsening of the claimant's mental health symptoms, and there are no opinions suggesting greater functional limitations.

(Doc. 13, PageID.77).

Stevens disputes the ALJ's finding that Dr. Koulianos and Dr. Duke's opinions were consistent with his 2019 functional report. First, even if Stevens were correct on that point, he fails to address the other reasons the ALJ gave for finding those opinions "largely persuasive"—in particular, that it was consistent with Stevens's mental health treatment history. Second, Stevens has failed to show that the ALJ's determination on that point was unreasonable or not supported by at least substantial evidence. Stevens points to the following statements from his functional report that he claims show greater limitations than those found by the two state agency reviewers:

- "[H]e sometimes reads, plays checkers and solitaire, and watched documentaries depending on his 'mindset.' However, … his activities have changed since he became disabled because his hand shakes, he can't sit still,

and finds himself crying." (Doc. 14, PageID.1627 (citing Doc. 13, PageID.291) (record citation omitted)).

- "[H]e does not go out because of his PTSD and anxiety that causes him to blank out in public and stick to himself[,] he only goes out sometimes because he is afraid and ashamed[, and] he was not a big socializer and gets irritated very easily." (*Id.*).

- "[H]e does not handle stress well and has anxiety and insomnia." (*Id.*).

Stevens does not say what specific portions of Dr. Koulianos and Dr. Duke's opinions he believes are contradicted by these statements, and each of these asserted limitations appears accounted for. Their opinions that Stevens should be limited to carrying out short and simple instructions, to concentrating and attending "for reasonable periods of time of up to 2 hours," and to having any changes in work routines be "fully explained and gradually introduced," appear to account for Stevens's claims of anxiety and difficulty concentrating; their opinions that Stevens should have only limited contact with co-workers and the general public, with supportive supervision, appear to account for his claims of antisocial behavior and irritability. Stevens has presented no persuasive argument to the contrary.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Stevens's application for benefits is therefore due to be **AFFIRMED**.

### V.   *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Stevens's July 22, 2019 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of September 2022.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**